UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

FCCI INSURANCE COMPANY,    )
    )
    Plaintiff,    )
    )    Case No.
v.    )    5:18-cv-038-JMH
    )
NICHOLAS COUNTY LIBRARY,    )    **MEMORANDUM OPINION**
    )    **AND ORDER**
    Defendant.    )
    )

\*\*\*

Defendant Nicholas County Library ("the Library") has moved to dismiss this action and to compel arbitration. [DE 11]. The Library argues that Plaintiff FCCI Insurance Company's claims are subject to arbitration provisions that were incorporated by reference into the performance bond to which FCCI was a party. [*Id.*]. Alternatively, Plaintiff FCCI has responded in opposition to the motion to dismiss. [DE 25]. Additionally, FCCI has moved for leave to supplement its response. [DE 28]. The Library has replied to the response [DE 29] and filed a response in opposition to FCCI's motion for leave to file a supplemental brief [DE 30].

For the reasons that follow, FCCI's motion for leave to file a supplemental brief [DE 28] is **GRANTED**. Nicholas County Library's motion to dismiss and compel arbitration [DE 11] is construed as a motion for summary judgment and is **GRANTED**. The complete incorporation of the construction contract into the performance bond requires FCCI to submit its claims to the arbitrator for

threshold determinations about jurisdiction.  As a result, FCCI's claims in this action are **DISMISSED WITHOUT PREJUDICE.**

## I.  Factual & Procedural Background

The Nicholas County Library entered into a construction contract with Crace & Co., Inc., related to the construction of a two-story addition to the Nicholas County Library.  FCCI issued payment and performance bonds for the project, naming Crace as principal and Nicholas County Library as obligee.

The construction contract between Crace and the Library states,

> For any claim subject to, but not resolved by, mediation pursuant to Section 21.3, the method of binding dispute resolution shall be as follows:

> [X] Arbitration pursuant to Section 21.4 of this Agreement.

[DE 11-2 at 6, Pg ID 56].  Additionally, the contract provided that "[i]f the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any claim, subject to, but not resolved by, mediation shall be subject to arbitration." [*Id.* at 8, Pg ID 58].

Moreover, the construction contract states,

> If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any claim, subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association, in accordance with the Construction Industry Arbitration Rules in effect on the date of this Agreement.

[*Id.* at 8, Pg ID 58].

The construction contract defines a "claim" as

> . . . a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.

[DE 11-2 at 12, Pg ID 62]. Additionally, the construction contract further states, "The Contract Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner and the Contractor." [DE 28-1 at 12, Pg ID 200].

FCCI was not a party to the construction contract between Crace and the Library. Still, the FCCI performance bond states,

> The Condition Of This Obligation is such that whereas, the Principal entered into a certain contract with the Owner, dated the 18th day of October, 2016, a copy of which is hereto attached and made part hereof for the construction of: Nicholas Co. Library, New Two Story Addition, Carlisle, KY.

[DE 1-1 at 1, Pg ID 6].

One of the special conditions in the performance bond was that Crace install rebar to reinforce the walls of the library addition. After investigation, FCCI claims that this condition was not met. As a result, FCCI terminated Crace under the performance bond. At the same time, Nicholas County Library made a claim on the performance bond.

3

Subsequently, FCCI filed this action seeking a declaratory judgment on the alleged default and overpayment. [DE 1]. The Library moved to dismiss for lack of jurisdiction and to compel arbitration. [DE 11]. Additionally, if FCCI was not compelled to arbitrate, the Library has asked the Court to stay this case until Crace and the Library can submit their dispute to arbitration. [*Id.*].

Before the Court could rule on that motion, the parties agreed to stay the case and mediate the dispute. [DE 13]. Recently, the parties notified the Court that they had failed to resolve the dispute through mediation and asked that the stay be lifted and that a briefing schedule be implemented for the pending motion to dismiss or compel arbitration. [DE 17; DE 18]. FCCI responded to the motion to dismiss or compel on February 20, 2019. [DE 19]. A demand for arbitration from the Library, dated January 25, 2019, is attached to the FCCI's response in opposition to the motion to dismiss. [DE 19-1].

Then, FCCI filed a motion for a temporary restraining order and preliminary injunction and asked for an expedited hearing on their motion. [DE 20; DE 21]. The parties provided oral argument at an expedited motion hearing on March 5, 2019. [DE 26]. Subsequently, the Court denied FCCI's motion for injunctive relief. [DE 27].

Then, FCCI filed a motion for leave to file a supplement to their response in opposition, including an exhibit of the full construction contract. [DE 28]. The Library replied to FCCI's response [DE 29] and filed a response in opposition to FCCI's motion for leave to file a supplement [DE 30]. As a result, the motion to dismiss and motion for leave are ripe for review.

## II.  Standard of Review and Applicable Law

The Federal Rules of Civil Procedure do not line up perfectly with the provisions contained in the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, more commonly referred to as the Federal Arbitration Act ("FAA"). Rule 12 of the Federal Rules of Civil Procedure does not list "motion to compel arbitration" as a potential responsive pleading. As a result, federal courts have split on the proper procedural vehicle to be used for dismissal based on a motion to compel arbitration.

Federal courts are split on whether a motion to dismiss based on an arbitration provision should be brought based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), whether the motion to dismiss to compel arbitration should be brought for failure to state a claim upon which relief may be granted under Rule 12(b)(6), or whether a motion to dismiss to compel arbitration should be brought based on lack of proper venue under Rule 12(b)(3). Federal courts address motions to

compel arbitration in drastically different ways and splits of authority exist even within the same circuits and districts.

**(A) Motion to Dismiss Under 12(b)(1)**

Initially, some courts have held that binding arbitration provisions divest the court of subject matter jurisdiction. These courts hold that if no obstacle prevents the plaintiff from litigating his or her claims as a result of this dismissal, then the motion should be considered under Rule 12(b)(1). *See Powers Distrib. Co. v. Grenzebach Corp.*, No. 16-12740, 2016 WL 6611032, at *2-3 (E.D. Mich. Nov. 9, 2016) (discussing the split among district courts in the Sixth Circuit and citing cases).

In fact, the weight of federal authority seems to favor considering a motion to dismiss and compel arbitration under Rule 12(b)(1). *See, e.g.*, *Gilbert v. Donahoe*, 751 F.3d 303, 306, 306 n.1 (5th Cir. 2014); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Harris v. United States*, 841 F.2d 1097, 1099 (Fed. Cir. 1988); *Mann v. Equifax Info. Servs., LLC*, No. 12-cv-14097, 2013 WL 3814257, at *2 (E.D. Mich. July 22, 2013); *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs.*, Inc., No. 13-60051-CIV, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013); *Orange Cty. Choppers, Inc. v. Goen Techs. Corp.*, 274 F. Supp. 2d 372, 373 (S.D.N.Y. 2005).

Moreover, the conclusion that federal courts lack subject matter jurisdiction over claims where parties have agreed to

arbitrate may be supported by the text of the FAA.  Section four of the FAA provides,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any United States district court which, save for such agreement, would have jurisdiction under title 28*, in a civil action, . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added).  Of course, the language that says, "save for such [arbitration] agreement, [the district court] would have jurisdiction under title 28," seems to indicate that the federal district courts do not have subject matter jurisdiction in the presence of a valid arbitration agreement between parties.

Curiously though, the FAA also allows for courts to retain jurisdiction and stay a case pending arbitration and then enter a judgment on the award after arbitration.  9 U.S.C. §§ 3, 9.  In fact, there is a split of authority on whether the FAA mandates a stay of litigation as opposed to a dismissal in certain situations. *See Wilczewski v. Charter West Nat'l Bank*, 889 N.W.2d 63, 71 n.34 (Neb. 2016) (acknowledging the split among the federal circuits and citing cases).  Thus, it follows that, if a court can stay litigation when it compels arbitration that courts have and retain subject matter jurisdiction over the dispute, even when compelling the parties to arbitrate based on a valid arbitration clause.

As a result, some courts have expressly held that valid arbitration clauses do not divest the court of subject matter jurisdiction. *See Liveware Publishing, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 78-79 (D. Del. 2003) ("[An arbitration agreement] requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate."); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n. 1 (3d Cir. 1991). Alternatively, other courts simply acknowledge the dispute about how to best address motions to compel but then hold that the distinction is immaterial because, under either rule, the arbitration agreement requires the parties to submit their claims to arbitration. *Moore v. Ferrellgas*, 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008).

Finally, the Sixth Circuit has cautioned courts to be more precise when considering challenges phrased as attacks on "jurisdiction." *See Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518-19 (6th Cir. 2006). In fact, the United States Supreme Court has also urged courts to use the term "jurisdiction" with more precision, describing the term jurisdiction as "a word of many, too many, meanings." *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). And for good reason. Here, the defect created by

the binding arbitration clause, assuming it applies to these claims, does not appear to be a lack of subject matter jurisdiction where the Court in fact has and may retain subject matter jurisdiction pending arbitration.

**B.    Motion to Dismiss Under 12(b)(3)**

Other courts have considered motions to compel arbitration as motions to dismiss for lack of proper venue pursuant to Rule 12(b)(3). *See Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015). These courts treat arbitration agreements as types of forum-selection clauses.

Regardless, it appears that the United States Supreme Court has foreclosed the use of Rule 12(b)(3) motions to dismiss to enforce mandatory forum-selection clauses. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the Western Dist. Of Texas*, 571 U.S. 49, 55-56 (2013). The Court explained that "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* at 55 (citing 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3)); *see also In re Union Elec. Co.*, 787 F.3d 903, 907 (8th Cir. 2015) (stating that *Atlantic Marine* "clearly eliminated the possibility of using Rule 12(b)(3) as a means to enforce a forum-selection clause").

But, while *Atlantic Marine* did not discuss the mandatory versus permissive forum-selection clause distinction, most courts have "limited the *Atlantic Marine* framework to situations where the forum selection clause is mandatory." *Waste Mgmt. of Louisiana, LLC v. Jefferson Par.*, 48 F. Supp. 3d 894, 909 (E.D. La. 2014); *see also BAE Sys. Tech. Sols. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470-72 (4th Cir. 2018) (citing cases); *Scepter, Inc. v. Nolan Transp. Grp., LLC*, 352 F. Supp. 3d 825, 832-33 (M.D. Tenn. 2018).

Still, to the extent that Rule 12(b)(3) applies to dismissal based on arbitration provisions, it appears applicable only in the limited circumstance where a federal court is asked to compel arbitration *outside* of its district. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("[W]here the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." (emphasis in original)). Thus, dismissal of an action due to improper venue based on an arbitration provision is only appropriate where the motion to compel arbitration will result in arbitration in another federal district. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011).

Here, Rule 12(b)(3) is inapplicable for three reasons. First, if the arbitration provisions are applicable and constitute forum-

selection clauses, they appear to be more appropriately construed as mandatory, not permissive. The language in the construction contract says, "If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any claim, subject to, but not resolved by, mediation *shall be subject to arbitration* . . . ." [DE 11-2 at 8, Pg ID 58 (emphasis added)]. As a result, the use of a 12(b)(3) motion to dismiss based on a mandatory forum-selection clause is foreclosed by the *Atlantic Marine* framework. See *Atl. Marine Constr. Co.*, 571 U.S. at 55-56 (2013).

Second, venue is not improper here because the Court is not being asked to compel arbitration outside the Eastern District of Kentucky. If arbitration occurs between the parties in this dispute, it will occur in this district.

Finally, even if a motion to dismiss under 12(b)(3) is permitted, such relief has been waived by the Defendant because no such motion was made in the Defendant's original motion to dismiss. *See* Fed. Rs. Civ. P. 12(g), (h). As a result, the motion to compel arbitration in this case may not be considered as a motion to dismiss for improper venue under Rule 12(b)(3).

**C.   Motion to Dismiss Under 12(b)(6) and Motion for Summary Judgment Under Rule 56**

Alternatively, other courts address motions to compel arbitration as motions to dismiss for failure to state a claim

upon which relief may be granted under Rule 12(b)(6). *See, e.g.,* *City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017) (discussing the split and citing cases); *High v. Capital Senior Living Props. 2—e Heatherwood, Inc.*, 594 F. Supp. 2d 789, 795 (E.D. Mich. 2008).

Similarly, the motion to compel arbitration in this case is most appropriately considered as a motion to dismiss under Rule 12(b)(6). The defect imposed by the mandatory arbitration provisions, if they apply to the claims brought by FCCI, is not lack of subject matter jurisdiction or improper venue. Simply put, a federal court may not grant relief on claims that are subject to a mandatory arbitration provision.

Still, that does not end the analysis, because in litigating the Library's motion to compel, both parties have submitted matters outside the pleadings. As a result, the motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). This result is supported by analogous cases in this Court. *See Treved Exteriors, Inc. v. Lakeview Const., Inc.*, No. 12-cv-83-DLB-JGW, 2014 WL 1047117, at *3 (E.D. Ky. Mar. 18, 2014); *Bruszewski v. Motley Rice, LLC*, No. 5:12−cv−46−JMH, 2012 WL 6691643, at *3 (E.D. Ky. Dec. 21,

2012); *Arnold v. Rent-A-Center*, No. 11-cv-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) (surveying cases from other circuits).

In sum, the motion to compel here is most properly considered as a motion to dismiss under Rule 12(b)(6). Still, because the parties have submitted outside the pleadings, the motion to compel must be considered as a motion for summary judgment.

**D.  Summary Judgment Standard and Applicable Law**

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

Normally, in a diversity action like this one, the Court must apply the substantive law of the forum state and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014).

But here, the construction contract provides that, "The contract shall be governed by the law of the place where the Project is located, except, that if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 21.4." [DE 11-2 at 7, Pg ID 57].

The United States Supreme Court has long recognized that the FAA "establishe[d] a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984)). The FAA, "which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Id.*

As a result, the Federal Arbitration Act governs the arbitration provisions in Section 21.4 of the construction contract, including threshold questions about the arbitrability of

claims. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019); *see also Hathaway v. Eckerle*, 338 S.W.3d 83, 87-88 (Ky. 2011) (contracts selecting the Federal Arbitration Act as the law governing dispute resolution between the parties are generally valid in Kentucky and citing cases). Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein*, 139 S.Ct. at 529 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

## III. Analysis

At present, there are only two narrow disputes before the Court. First, FCCI has moved for leave to file a supplement to its response in opposition to the motion to dismiss and compel arbitration, including the full text of the construction contract, which is attached as an exhibit to the motion for leave.

Second, the primary dispute is whether the binding arbitration provisions in the construction contract were incorporated by reference into the FCCI performance bond meaning that FCCI agreed to submit its claims and any related jurisdictional issue to arbitration. It is undisputed that the construction contract contains arbitration provisions that assign jurisdiction to the arbitrator under the AAA Construction Industry Arbitration Rules. It is also undisputed that the FCCI performance bond incorporated the construction contract without exclusion.

15

Here, FCCI does not challenge the facial validity of the arbitration clause in the construction contract but instead asserts that the clause does not apply to FCCI's claims because FCCI was not a "party" to the construction contract. As such, the discrete dispute at this juncture is whether the arbitration provisions in the construction contract, which were incorporated into the performance bond, apply to FCCI's claims for relief in this lawsuit. If so, then the arbitrator has jurisdiction to decide whether the claims in this action are subject to arbitration. If not, then this lawsuit will continue in the ordinary course of litigation.

## A.     Motion for Leave to Supplement FCCI's Response

First, in response to discussion in the Court's previous memorandum opinion and order denying injunctive relief, FCCI moved for leave to file a supplemental response brief and to provide the entire construction contract to the Court. [DE 28]. The Library responded in opposition. [DE 30]. The Library's response indicates no objection to providing the Court a copy of the entire construction contract between the Library and Crace but states that the Library opposes FCCI's request to file a supplemental brief because "it improperly contains additional argument on page 2."

The argument at issue here is FCCI's contention that even though the performance bond to which FCCI was a party incorporated

the provisions of the construction contract between Crace and the Library, the arbitration provisions in the construction contract refer to any "claim" raised by the "parties," and FCCI argues that the arbitration provisions are inapplicable because they are not a "party" to the construction contract.

The Library is correct that normally, failure to raise an argument results in waiver.  Still, the argument in dispute was actually raised for the first time at the hearing on FCCI's motion for injunctive relief, not in the motion for leave to file a supplemental brief.  Counsel for the Library addressed FCCI's argument at the hearing and failed to object to this new argument. Furthermore, and more importantly, the Library has addressed FCCI's new argument in its reply to FCCI's response in opposition. Thus, this new argument advanced by FCCI has been fully briefed and the Library has had an opportunity to respond in opposition. Furthermore, the Court finds consideration of the entire construction contract between Crace and the Library informative. As a result, the Court will grant FCCI's motion for leave to file a supplemental brief and will consider FCCI's argument about the potential impact of its not being a "party" to the construction contract on the duty to arbitrate.

B.    **Incorporation and Applicability of the Arbitration Provisions**

Second, the primary dispute between the parties is whether the arbitration provisions in the construction contract apply to

the claims that FCCI has asserted in this lawsuit. There is no dispute that the construction contract between Crace and the Library selected arbitration as the method for binding dispute resolution. Additionally, it is clear from the plain text of the performance bond that all provisions of the construction contract are incorporated into the performance bond by reference without any exclusions.

Still, FCCI raises an interesting argument, stating that the arbitration provisions and definition of "claim" in the construction contract are expressly limited to "the parties" and that, since they are not a "party" to the agreement, the arbitration provisions do not apply to their claims. But, while novel, upon closer review of the applicable law and facts of this case, this argument does not exclude FCCI's claims from the arbitration provisions in the construction contract, at least for consideration of threshold issues pertaining to arbitrability.

When FCCI issued the performance bond and assumed the role of surety for Crace, FCCI stepped into the shoes of Crace and became responsible for Crace's obligations under the construction contract. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("[N]onsignatories may be bound to an arbitration agreement under ordinary contract and agency principles."); *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir. 1984) ("Although Exchange Mutual was not a signatory to the primary

18

construction contract, the performance bond incorporated by reference the terms of the underlying subcontract. The subcontract, in turn, incorporated by reference the terms of the primary construction contract which imposed an obligation to submit all unresolved disputes to arbitration."); *Stones River Elec., Inc. v. Chevron Energy Sols. Co.*, No. 5:06-CV-115-R, 2007 WL 433083, at *3 (W.D. Ky. 2007). Kentucky law is accord and has held that a surety to a construction contract stands in the shoes of the contractor on the project. *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501, 503 (Ky. 1998) ("Cumberland, in effect, stood in the shoes of Z & J *and became the contractor on the project*." (emphasis added)) (involving a surety enforcing an incorporated arbitration provision).

Of course, as FCCI points out, there are differences between the language of the arbitration clauses in the aforementioned cases and the case at bar, but those differences do not change the legal import of the incorporation of the arbitration provisions. FCCI cites *AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777 (8th Cir. 2001) for the proposition that it is inappropriate to require performance bond issues to be arbitrated based on an incorporation clause where it is unclear if the parties have agreed to arbitrate. In *AgGrow*, the court found that AgGrow Oils and National Union had not manifested a clear intent to submit their disputes under the bond to arbitration. *Id.* at 781.

Still, as the library points out, the bond in *AgGrow* contained a provisions that said, "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located . . . within two years after the Surety refuses or fails to perform its obligations under this Bond." *Id.* at 780. No such language exists in the performance bond at issue here.

Moreover, even if the *AgGrow* decision reaches a result that would not compel FCCI to arbitrate, the decision only constitutes persuasive authority for this Court. Additionally, since the Eight Circuit's decision in *AgGrow*, federal courts, including the United States Supreme Court have continually reaffirmed a clear preference in favor or arbitration, generally deferring to the contractual agreements of the parties and deferring in favor of arbitration when disputes arise. *See Preston*, 552 U.S. at 349; *see also Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 394-95 (6th Cir. 2014).

Furthermore, FCCI argues that it is being coerced into arbitration. But that is not so. FCCI is a sophisticated party that was on equal footing with the other parties, if not in a superior position, when negotiating the terms of the performance bond. In fact, all the parties to the construction contract and performance bond are sophisticated business or governmental entities that presumably have ready access to consultation of

counsel and who regularly deal in contracts and performance bonds of this type. Simply put, if FCCI did not want the arbitration provisions in the construction contract to be incorporated into the performance bond, they simply needed to bargain for a different method of dispute resolution and/or clearly manifest an intent to exclude the arbitration provisions on the face of the bond. Otherwise, it is difficult to believe that FCCI did not know that they were agreeing to arbitrate any claims in this matter, seeing as FCCI is a sophisticated party that regularly deals in transactions of this type.

In sum, while FCCI was not a party to the construction contract between Crace Construction and the Nicholas County Library in the sense that FCCI was not an initial signatory to the construction contract, FCCI did incorporate all the terms of the construction contract into the performance bond, including the binding arbitration provisions. As surety, FCCI stepped into the shoes of Crace Construction under the construction contract. As a result, the arbitration provisions in the construction contract were incorporated into the performance bond and apply to FCCI, requiring FCCI, at least initially, to submit their claims to arbitration to rule on other jurisdictional or threshold issues.

## C. Impact of Arbitration Provisions on Threshold Issues

FCCI has raised additional threshold arguments, including arguments that the claims brought do not arise out of the

construction contract and that the scope of the arbitration clause it limited to disputes between Crace and the Nicholas County Library. [DE 19]. Normally, Courts must analyze the following factors when asked to dismiss claims and compel arbitration,

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

But here, the parties agreed to submit any threshold questions, including questions about jurisdiction, to the arbitrator. The main arbitration provision in the construction contract provides that arbitration proceedings "shall be administered by the American Arbitration Association, in accordance with the Construction Industry Arbitration Rules in effect on the date of this Agreement." [DE 11-2 at 8, Pg ID 58]. The jurisdiction provisions of the American Arbitration Association ("AAA") Construction Industry Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AM. ARBITRATION ASS'N, CONSTRUCTION INDUSTRY ARBITRATION RULES AND MEDIATION PROCEDURES 18 (2016) (Regular Track Procedure R-9(a)).

Recently, the United States Supreme Court held that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S.Ct. at 531. As a result, seeing as the parties agreed to let the arbitrator rule on his or her own jurisdiction, any other threshold questions about arbitrability must be submitted to the arbitrator, not this Court.

## D. Whether a Stay or Dismissal is Most Appropriate

Finally, the last consideration that remains is whether this Court should dismiss the claims in FCCI's complaint or stay the case pending the outcome of the arbitration proceedings.

A split of authority on whether the Section 3 of the FAA mandates a stay of litigation as opposed to a dismissal in certain situations. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014); *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766 (8th Cir. 2011); *Choice Hotels Intern. v. BSR Tropicana Resort*, 252 F.3d 707 (4th Cir. 2001); *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141 (1st Cir. 1998); *Alford v. Dean Witter Reynolds*, Inc., 975 F.2d 1161 (5th Cir. 1992). *But see, Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015); *Halim v. Great Gatsby's Auction Gallery*, Inc., 516 F.3d 557 (7th Cir. 2008); *Lloyd v. Hovensa, LLC.*, 369 F.3d 263 (3d Cir. 2004); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994).

The Sixth Circuit has permitted courts to dismiss actions where the parties did not explicitly request a stay of the action. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518-19 (6th Cir. 2017) (explaining that the FAA requires a court to stay proceedings pending arbitration only "on application of one of the parties" (quoting 9 U.S.C. § 3)). Here, the Library requested a stay of the matter while Crace and the Library arbitrate only if the Court determines that FCCI's claims are not subject to arbitration. [DE11-1 at 8, Pg ID 48]. Additionally, and more importantly, FCCI has argued that a stay of this action is not appropriate. [DE 19 at 9-10, Pg ID 107-08]. As a result, neither of the parties have explicitly requested a stay of this matter pending arbitration in lieu of dismissal.

As a result, having found that FCCI must submit all claims and threshold questions pertaining to jurisdiction to the arbitrator, the Court will dismiss this action without prejudice. If the arbitrator determines that the claims raised by FCCI are outside the scope of the arbitration provisions in the construction contract or that any of the claims are otherwise not arbitrable, FCCI mat refile an action for relief.

## IV. Conclusion

Here, the complete incorporation of the provisions of the construction contract into the performance bond requires that FCCI submit its claims to the arbitrator, at least for initial threshold

determinations about arbitrability.  Accordingly, **IT IS ORDERED** as follows:

(1)  FCCI's motion for leave to file a supplemental brief [DE 28] is **GRANTED**;

(2)  Nicholas County Library's motion to dismiss and compel arbitration [DE 11] is construed as a motion for summary judgment;

(3)  Nicholas County's motion [DE 11] is **GRANTED**;

(4)  Summary judgment is granted in favor of Nicholas County Library in the narrow sense that the complete incorporation of the construction contract into the performance bond requires FCCI to submit its claims to the arbitrator for threshold determinations on jurisdiction;

(5)  This action is **DISMISSED WITHOUT PREJUDICE**; and

(6)  Judgment consistent with this opinion will be entered contemporaneously herewith.

This the 15th day of March, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge